**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

VAN VU,                                    )
                                           )
            Petitioner,                    )
                                           )
v.                                         )        Case No. CIV-26-446-R
                                           )
TODD BLANCHE, et al.,                      )
                                           )
            Respondents.[1]                )

**REPORT AND RECOMMENDATION**

Petitioner Van Vu, a noncitizen[2] and Vietnamese national, filed a Verified Petition

for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention by the U.S.

Immigration and Customs Enforcement ("ICE"). Doc. 1. United States District Judge Jodi

W. Dishman referred this matter to the undersigned Magistrate Judge in accordance with

28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. The matter was reassigned to Judge David L.

Russell. Doc. 5. Respondents timely filed a Response, and Petitioner timely filed a Reply.

Docs. 11, 14. For the reasons set forth below, the undersigned recommends that the Court

grant the Petition to the extent it requests habeas relief under 28 U.S.C. § 2241 for release

from ICE custody.

---

[1] Markwayne Mullin was confirmed as Secretary of the Department of Homeland Security
on March 23, 2026. He replaces Kristi Noem and is substituted as the proper respondent
pursuant to Federal Rule of Civil Procedure 25(d). Todd Blanche was announced as Acting
Attorney General on April 2, 2026. He replaces Pamela Bondi and is substituted as the
proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Unless directly quoting, this Report and Recommendation "uses the term 'noncitizen' as
equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020)
(citing 8 U.S.C. § 1101(a)(3)).

## I.    **Background**

Petitioner Van Vu is a citizen of Vietnam who was lawfully admitted to the United States on June 25, 1981, as a refugee.  Pet. at 1; Doc. 11-2 at 1 (Notice to Appear). Petitioner states that he later became a Lawful Permanent Resident.  Pet. at 1.  Before coming to the United States, he resided in a refugee camp in Indonesia for one year.  *Id*. at 9.  Petitioner alleges he lacks a valid Vietnamese passport.  *Id.*

On November 20, 2002, Petitioner was convicted of Manufacture of a Fictious Driver's License, in violation of Okla. Stat. tit. 21, § 1550.41(C), and was sentenced to two years' imprisonment.  Doc. 11-2 at 1; *see also* Doc. 11-1 (Soto Decl.) at 2.  Based on that conviction, ICE initiated removal proceedings against Petitioner through issuance of a Notice to Appear, charging him as removable pursuant to 8 U.S.C. § 237(a)(2)(A)(iii) for having been convicted of an aggravated felony after admission.  Doc. 11-2 at 1.

On June 5, 2003, Petitioner was ordered removed to Vietnam.  Resp. at 11. Respondents contend Petitioner waived appeal of his order of removal, rendering the order of removal administratively final on that date.  *Id.*; Soto Decl. at 2; Pet. at 2 (calculating Petitioner's aggregate post-order detention time as beginning in June of 2003).

Petitioner alleges he was in ICE detention from April 2003 until November 2003, when he was released on an Order of Supervision ("OOS").  Pet. at 2; Soto Decl. at 2 (stating that Petitioner was released on an OOS on November 21, 2003).  Petitioner asserts Respondents requested travel documents from Vietnam in September 2003 and Vietnam

2

denied their request.[3]  Pet. at 2.  Petitioner alleges that his "OOS was issued pursuant to 8 C.F.R. § 241.13 because it was determined that there was no likelihood of removal in the reasonably foreseeable future."  Pet. at 2.  Respondents do not contest that his OOS was issued on this basis.  Neither party, though, has provided the Court a copy of the OOS.  Petitioner asserts since his release on the OOS, he "has been in full compliance with the law and his OOS," including attending regular ICE check-ins and updating ICE with his new address every time he moved.  *Id.*[4]  Petitioner is married to a United States citizen, and they have three minor children together.  *Id.*

---

[3]  Respondents do not address any prior attempts to remove Petitioner or whether ICE submitted a travel document request in September 2003.

[4]  Respondents allege (1) Petitioner was convicted of Possession of Fraud Immigration Documents on January 29, 2008, and (2) his assertion he has fully complied with the law since his release is inaccurate.  Resp. at 11.  However, Respondents do not provide any evidence of the alleged 2008 conviction, such as charging documents or a judgment.  The undersigned questions whether this is a typographical error in the Declaration on which Respondents rely, *see* Doc. 1-1 at ¶ 10, and Petitioner was last convicted in 2003 rather than 2008.  The undersigned takes judicial notice of the Oklahoma Department of Corrections ("ODOC") online inmate locator, at https://okoffender.doc.ok.gov/ (last visited May 22, 2026), and Oklahoma State Courts Network ("OSCN") records, at https://www.oscn.net/dockets/Search.aspx#all (last visited May 22, 2026).  The locator and OSCN records show Petitioner was last sentenced in state court on March 24, 2003, to one year and eight months' imprisonment for manufacture of a fictitious driver's license in *State v. Vu*, No. CF-2002-2280 (Tulsa County District Court).  *See Triplet v. Franklin*, 365 F. App'x 86, 92 n.8 (10th Cir. 2010) (taking judicial notice of ODOC's offender search website).  Further, presuming an alleged conviction of "Possession of Fraud Immigration Documents" would be a federal offense, the undersigned has been unable to locate any conviction in federal district court during the alleged period.  Respondents do not allege this 2008 conviction was the basis to revoke Petitioner's OOS, so the undersigned concludes it ultimately has no impact on the analysis.  The undersigned, though, reminds Respondents' counsel to conduct "an inquiry reasonable under the circumstances" that "factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b)(3).

On February 26, 2026, Petitioner was re-detained by ICE at a scheduled check-in appointment and his OOS was revoked. *Id.*;[5] Resp. at 11; Soto Decl. at 3. That day, ICE served Petitioner with a written Notice of Revocation of Release, stating his OOS was "revoked pursuant to 8 C.F.R. 241.13(i)" because "circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future" and "ICE is seeking a travel document to affect your expeditious removal to Vietnam." Doc. 11-3 (Notice of Revocation) at 1-2. ICE informed Petitioner it would not conduct a custody review to determine whether he should remain detained because it anticipated removing Petitioner in August 2026. Doc. 11-5 (Notice of Imminent Removal) at 1 (stating, pursuant to 8 C.F.R. 241.4(g)(4), ICE will not conduct a custody review pending Petitioner's removal because "ICE determined that because of changed circumstances there is a significant likelihood that you may be removed in the reasonably foreseeable future" and ICE "expect[s] this to occur in August/2026"). Also on February 26, 2026, an ICE officer conducted an informal interview with Petitioner to allow him to respond to the reasons for the revocation of his OOS. Doc. 11-4 (Informal Interview Worksheet) at 1; *see also* Soto Decl. at 3.

Petitioner alleges he cannot be removed to Vietnam because "he does not have a valid travel document and there is no significant likelihood that Vietnam will issue one to

---

[5] Petitioner first alleged he was detained on February 25, 2026. *See* Pet. at 2. However, after Respondents filed their Response, which contains evidence of the detention occurring on February 26, 2026, Petitioner refers in his Reply to his date of detention as February 26, 2026. *See* Reply at 6. Whether Petitioner was re-detained on February 25 or February 26 does not impact the analysis.

him in the reasonably foreseeable future." Pet. at 4. He alleges Respondents are "not in possession of any credible or persuasive documents or evidence that Petitioner's removal is likely to occur in the reasonably foreseeable future." *Id*. at 3-4.

ICE Enforcement and Removal Operations ("ERO") Officer Juan Soto states ERO "submitted a Travel Document Request for review to ICE ERO Headquarters" on March 16, 2026, and the request "is currently pending." Soto Decl. at 3. Respondents have not submitted the travel document request to the Vietnamese government. *Id.* (asserting the "process requires submission to Headquarters for review, after which the request is forwarded to the attaché in Vietnam for processing"). Respondents nonetheless contend there is a significant likelihood that Petitioner will be removed to Vietnam in the reasonably foreseeable future. *See* Resp. at 24. Respondents allege removals to Vietnam have increased, "evidencing a clear change in circumstances on two fronts, both the priority placed on removing individuals to Vietnam and regarding Vietnam's willingness to accept such individuals." *Id*. at 23-24. Officer Soto also states, "Vietnam has issued travel documents for every travel document request ERO has submitted since February 2025," and "the majority of these cases were citizens of Vietnam who entered the United States prior to 1995." Soto Decl. at 3 (citation modified). Respondents are not attempting to remove Petitioner to a third country. *Id*. at 4; Pet. at 3.

When Petitioner filed his Petition on March 9, 2026, he was detained at Cimarron Correctional Facility in Cushing, Oklahoma, and he is still detained there. Pet. at 3; *see* ICE Online Detainee Locator System, at https://locator.ice.gov/odls/#/results (last visited May 22, 2026).

II.    **Petitioner's Claims**

Petitioner raises four grounds for relief:

- **Ground One:** Petitioner requests a declaratory judgment that he "is detained pursuant to 8 U.S.C. § 1231(a)(1)," he "has previously demonstrated to ICE's satisfaction that there is no significant likelihood of his removal in the reasonably foreseeable future ("NSLRRFF")," "that ICE did not rebut [his] prior NSLRRFF showing prior to re[-]detaining him," and "that until ICE rebuts [his] prior NSLRRFF showing, [he] may not be re[-]detained." Pet. at 22-23.

- **Ground Two**: Petitioner contends his detention violates the Immigration and Nationality Act ("INA") and applicable ICE regulations. Specifically, he alleges Respondents "failed to comply with these provisions" before re-detaining him after his release on an OOS. *Id.* at 23.

- **Ground Three**: Petitioner raises two due process claims. He alleges his continued immigration detention violates his "Fifth Amendment guarantee of due process" established in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) because Respondents have not rebutted his prior showing in 2003 of no substantial likelihood of removal in the foreseeable future. Pet. at 23-24. Petitioner also claims he has been detained "to punish him and to otherwise send a message to similarly situated individuals that they must leave the United States to avoid a similar fate." *Id.* at 24.

- **Ground Four**: Petitioner alleges Respondents violated the Administrative Procedures Act ("APA") as "[their] decisions, which represent changes in the agencies' policies and positions, have considered factors that Congress did not intend to be considered, have entirely failed to consider important aspects of the case, and have offered explanations for their decisions that run counter to the evidence before the agencies." *Id.* at 25. He also alleges Respondents' decision to re-detain him is "arbitrary, capricious, and not in accordance with law…violat[ing] the APA." *Id.* at 25.

Petitioner seeks immediate release from ICE detention subject to the conditions of his prior OOS. *Id.* at 26. In addition, he seeks various types of injunctive and declaratory relief, including restraints on Respondents' attempts to move him from Oklahoma, remove him to a third country, or re-detain him without travel documents. *Id.* at 26-27. Petitioner

also seeks attorney fees and costs under the Equal Access to Justice Act ("EAJA"). *Id.* at 27.[6]

### III.     **Relevant Standards**

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."     28 U.S.C. § 2241(c)(3).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

Petitioner has a final order of removal, meaning that his detention is governed by 8 U.S.C. § 1231(a).  Under that statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  *Id.* § 1231(a)(1)(A).  This 90-day period is known as the "removal period."  *Id.*  The removal period begins on the latest of: (1) date that the order of removal becomes administratively final, (2) the date of the court's final order when a removal order is judicially reviewed, or (3) the date the noncitizen is released from detention or confinement if detained, unless the noncitizen is confined under immigration processes.  *Id.* § 1231(a)(1)(B).  During the removal period, noncitizens are subject to mandatory detention.  *Id.* § 1231(a)(2)(A).

However, the detention of a nonresident subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the removal

---

[6]  To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment.  28 U.S.C. § 2412(d)(1)(B).  Thus, the Court need not address this request at this juncture.

period.  *See Zadvydas*, 533 U.S. at 701.  "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id*.

Ordinarily, "if the alien does not leave or is not removed within the removal period," he may be released "subject to supervision."  8 U.S.C. § 1231(a)(3) (citation modified).  Criminal aliens detained beyond the removal period under § 1231(a)(6) may also be released "subject to supervision."  As relevant here, after ICE releases a noncitizen on an OOS, federal immigration officials may later revoke his OOS and return the noncitizen to custody if he violates conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  *Id.* § 241.13(i)(2).[7]  Such revocation triggers a notification and review process:

> **Revocation procedures**. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

---

[7]Federal officials codified *Zadvydas* principles into immigration regulations governing the detention review process with amendments to 8 C.F.R. § 241.4 and the addition of 8 C.F.R. § 241.13.  *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247 (F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period.  Specifically, the rule provides a process for [ICE] to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future.").

*Id.* § 241.13(i)(3).

## IV.   <u>Analysis</u>[8]

### A.   The Court has jurisdiction to hear Petitioner's claims regarding ICE's revocation of his OOS.

Respondents argue this Court "lacks jurisdiction to review" Petitioner's challenge to his re-detention because "8 U.S.C. § 1252(g) strips district courts of jurisdiction" over claims "arising from the decision or action to . . . execute removal orders.'" Resp. at 27. Relying on *Tazu*, Respondents assert "re-detention [is] 'simply the enforcement mechanism'" chosen to execute Petitioner's removal and therefore the Court lacks jurisdiction over his claim. *Id*. (quoting *Tazu v. Att'y Gen. of United States,* 975 F.3d 292, 298 (3d Cir. 2020)). The undersigned disagrees.

In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), the Supreme Court explained that § 1252(g)'s jurisdictional bar is narrow in scope and applies only to "three discrete actions" – the commencement of removal proceedings, adjudication of removal proceedings, and execution of removal orders. The Supreme Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

---

[8] Petitioner claims he was not required to exhaust statutory or administrative remedies before filing the Petition. Pet. at 11-13. Respondents do not allege he failed to exhaust his remedies before filing the Petition. The undersigned agrees that Petitioner was not required to exhaust before filing the Petition and therefore does not address exhaustion at length. *See Soberanes*, 388 F.3d at 1310 (holding exhaustion requirements do not apply to challenges to immigration detention brought in habeas proceedings).

Respondents' position has previously been rejected by Judges in this District, and the Court should do the same here. *See, e.g., Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *3 (W.D. Okla. Mar. 6, 2026) (noting *Tazu* "is not persuasive in light of the Supreme Court's consistent use of an exceedingly narrow construction on the jurisdiction channeling provisions of § 1252," and concluding the Court's "ability to consider the petition is not barred by § 1252(g)" as the petitioner was "not seeking review of the Executive's decision to execute an order of removal" but rather arguing "he is detained in violation of the INA because Respondents failed to comply with the applicable regulations prior to redetaining him after he was previously released on an OOS" (citation modified)); *Nguyen v. Bondi,* No. CIV-25-1402-D, 2026 WL 396548, at *4 (W.D. Okla. Feb. 12, 2026) ("The Court agrees with the magistrate judge's finding that neither 8 U.S.C. § 1252(b)(9) nor § 1252(g) deprives the Court of jurisdiction here.").

Here, Petitioner does not challenge the underlying merits of the removal. Rather, he contends ICE unlawfully revoked his OOS, rendering his detention unlawful. Accordingly, the Court should find it has jurisdiction to consider the Petition.

**B.   ICE failed to abide by its regulations when it revoked Petitioner's OOS.**

In Count Two, Petitioner alleges Respondents failed to comply with the INA and ICE's applicable regulations before re-detaining him after his prior release on an OOS. Pet. at 23. "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause

10

is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

Petitioner's re-detention is governed by 8 U.S.C. § 1231(a)(3) and its related regulations because he was released on an OOS on November 21, 2003, after being in ICE detention for approximately 169 days after his final order of removal on June 5, 2003. Pet. at 2; Soto Decl. at 2.

As an initial matter, the undersigned concludes Petitioner's OOS was issued and revoked pursuant to 8 C.F.R. § 241.13. First, he alleges "the OOS was issued pursuant to 8 C.F.R. § 241.13 because it was determined there was no significant likelihood of removal in the reasonably foreseeable future." Pet. at 2 (citation modified). Neither party has presented the Court with a copy of Petitioner's 2003 OOS, and Respondents do not address why the OOS was originally issued. Further, Respondents do not contest that Petitioner's OOS was issued pursuant to 8 C.F.R. § 241.13 and thereby concede it.

Further, Respondents do not rebut Petitioner's allegation ICE previously released him in 2003 because ICE determined that there was no significant likelihood of his removal in the reasonably foreseeable future. Rather, Respondents acknowledge "while removal to Vietnam may not have been likely in 2003, ERO is removing far more individuals to Vietnam now," and contend "this change in circumstances from Petitioner's previous attempt at removal in 2003 justifies his re-detention." Resp. at 30 (citation modified). Respondents further claim Petitioner is currently detained because "circumstances have

11

changed with respect to removals to Vietnam such that [there is] a significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." *Id*. at 24.

Accordingly, the undersigned reasonably infers that when Petitioner was previously released in 2003 ICE must have determined "there was no significant likelihood of removal in the reasonably foreseeable future" under 8 C.F.R. § 241.13(a), (b)(1), before issuing the OOS. *See*, *e.g., Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025) (finding "it is reasonable to infer that ICE must have made a determination that 'there was no significant likelihood of removal in the reasonably foreseeable future'" in similar circumstances (citing § 241.13(a), (b)(1)) (R&R), *adopted*, 2025 WL 3452454 (W.D. Okla. Dec. 1, 2025); *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3477023, at *3 (W.D. Okla. Oct. 30, 2025) (same) (R&R), *adopted,* 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025).

Next, evidence in the record supports Petitioner's assertion that his OOS was revoked pursuant to 8 C.F.R. § 241.13. For example, the Notice of Revocation explicitly states Petitioner's OOS was "revoked pursuant to 8 C.F.R. 241.13(i)" because "circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." *See* Doc. 11-3 at 1 (citation modified); Soto Decl. at 3.

Thus, the issue before the Court is whether Petitioner's OOS was properly revoked when ICE re-detained him. The undersigned determines that it was not.

### 1.    Violation of § 241.13(i)(2)

ICE may revoke an OOS and "return the alien to custody" if he violates the conditions of supervised release or "if, on account of changed circumstances, [ICE]

12

determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."   8 C.F.R. § 241.13(i)(1)-(2).   Although Respondents reference Petitioner's purported criminal history, they do not contend any recent conduct violated the terms of Petitioner's OOS or formed the basis for its revocation.  *See* discussion *supra* note 5.  As such, Respondents rely solely on "changed circumstances" to justify his revocation.  *See e.g.,* Resp. at 11; Soto. Decl. at 3; Doc. 11-3 at 1; Doc. 11-5 at 1.

As an initial matter, Respondents repeatedly assert Petitioner bears the burden to establish there is no significant likelihood of his removal in the reasonably foreseeable future.  *See* Resp. at 24 ("In short, Petitioner has not met his burden in showing that there is *no* significant likelihood of removal in the reasonably foreseeable future").  Judges in this District, though, have concluded "the burden [is] on Respondents to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2)."   *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025); *see Ye v. Bondi,* No. CIV-25-1230-D, 2025 WL 3485420, at *2 (W.D. Okla. Dec. 4, 2025) (finding "the magistrate judge appropriately placed the burden on Respondents to establish that, on account of changed circumstances, there is a significant likelihood of removal in the reasonably foreseeable future, pursuant to Section 241.13(i)(2)").  Other courts have agreed.  *See, e.g., Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (finding it was ICE's burden to demonstrate substantial likelihood of removal in the reasonably foreseeable future at the time of re-detention); *Roble v. Bondi,*  803 F. Supp. 3d 766, 772-73 (D. Minn. 2025) (same); *Escalante v. Noem*,

13

No. 25-cv-182 (MJT), 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) (same); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150-51 (D. Mass. 2025) (same).

When ICE decides to revoke an OOS on account of changed circumstances, ICE is required to make an individualized determination that the changed circumstances make removal of the noncitizen significantly likely in the reasonably foreseeable future. *See Kong,* 62 F.4th at 619-20 (citing 8 C.F.R. § 241.13(i)(2)). The regulations specify that ICE should consider several factors in making this determination, including:

> [t]he history of the alien's efforts to comply with the order of removal, the history of [ICE's] efforts to remove aliens to the country in question or to third countries, including the ongoing nature of [ICE's] efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

The record evidence here, however, shows ICE failed to make an individualized determination regarding the significant likelihood of Petitioner's removal based on changed circumstances, as required by § 241.13(i)(2). In the Notice of Revocation of Release, the only changed circumstance identified at the time of Petitioner's re-detention was that "ICE is seeking a travel document to affect [his] expeditious removal to Vietnam." Doc. 11-3 at 1. Similarly, in his declaration, ERO Officer Soto asserts "on March 16, 2026, ICE ERO submitted a Travel Document Request for review to ICE ERO Headquarters, and the Travel Document Request is currently pending." Soto Decl. at 3 (citation modified). The travel document request "process requires submission to [ERO] Headquarters for review, after which the request is forwarded to the attaché in Vietnam for processing."

14

Soto Decl. at 3. Officer Soto claims "based on prior experience with Vietnamese detainees, the issuance of travel documents generally takes several months." *Id.* (citation modified).

When confronted with similar facts, Magistrate Judge Maxfield of this District recommended habeas relief, observing:

> ICE also asserts that "following Petitioner's arrest, ICE gathered the relevant paperwork and compiled a travel document request," which was sent to ICE headquarters on October 27, 2025, *i.e.*, more than a month after Petitioner was detained. Respondents assert that headquarters "then sends the request to the People's Republic of China." Again, this information about ICE's internal process lacks sufficient specificity with regard to Petitioner's likelihood of removal. Respondents do not state if or when ICE headquarters actually sent the request to China, where the request was sent – for instance, a consulate or embassy – whether it was received, or whether China has made any response. In the absence of further factual declarations from Respondents, the undersigned assumes that none of these actions have occurred. There is nothing about local ICE authorities sending a travel document request for Petitioner to a particular ICE department that constitutes "changed circumstances" making his removal any more likely than it ever was.

*Ye v. Bondi*, No. CIV-25-1230-D, 2025 WL 4034264, at *5 (W.D. Okla. Nov. 18, 2025) (citation modified) (R&R), *adopted in relevant part*, 2025 WL 3485420 (W.D. Okla. Dec. 4, 2025).

Similarly, Officer Soto here states a Travel Document Request ("TDR") was sent to ICE ERO Headquarters ("HQ") but does not allege ICE ERO HQ has ever submitted the travel document request to Vietnam. Thus, record evidence of ICE's efforts to secure a travel document for Petitioner consists only of internal agency communications without direct engagement with the Vietnamese authorities, whose cooperation is essential for effectuating Petitioner's removal. Additionally, the Soto Declaration is dated March 25, 2026. *See* Soto Decl. at 4. Since then, Respondents have provided no updates regarding

15

the status of the TDR, including whether ERO HQ has forwarded the TDR to the attaché in Vietnam. *See, e.g.*, *Khaliq v. Noem*, No. CIV-25-1154-SLP, --- F. Supp. 3d ---, 2026 WL 196631, at *8 (W.D. Okla. Jan. 26, 2026) (considering "there has been no supplementation of the record" by ICE officials about petitioner's passport application since initial briefing several weeks prior, when concluding there was no significant likelihood of removal in the reasonably foreseeable future). With no information to the contrary, the undersigned presumes ERO has not taken additional steps to obtain Petitioner's travel document apart from those provided in Officer Soto's declaration. *See Ye*, 2025 WL 4034264, at *5 ("In the absence of further factual declarations from Respondents, the undersigned assumes that none of these actions [related to progress with travel document requests] have occurred.") (R&R), *adopted in part*, 2025 WL 3485420.

Accordingly, the undersigned concludes these generalized statements about ICE's intention to request a travel document from Vietnam are insufficient to establish a significant likelihood of Petitioner's removal to Vietnam in the reasonably foreseeable future. This analysis is consistent with other district courts. *See Sun v. Noem*, 2025 WL 2800037, at *2-3 (S.D. Cal. Sep. 30, 2025) ("Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' and that '[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner.' The Court finds these kind of vague assertions—akin to promising the check is in the mail— insufficient to meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'") (citation modified); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025)

16

("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future.").

Additionally, Respondents did not initiate the process of obtaining a travel document for Petitioner until March 16, 2026, 18 days *after* Petitioner's re-detention, when ERO submitted a travel document request to ICE ERO headquarters. *See* Soto Decl. at 3. Courts have held travel documents requested or received after the revocation of release are not changed circumstances that can justify revocation under § 241.13(i)(2) because they did not exist or occur at or before the time of revocation. *See, e.g.*, *Munagi v. McDonald*, 813 F. Supp. 3d 225, 229 (D. Mass. 2025) (granting petitioner's release, even though the government had obtained travel documents for petitioner's return to Kenya, because the travel documents were not requested until after petitioner's release had been revoked); *Duong v. Charles*, No. 25-cv-1375, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) (granting petitioner's immediate release, despite the fact the government had obtained travel documents for petitioner's return to Vietnam, because the travel documents were not requested until almost one month after petitioner's release had been revoked); *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 788 (D. Minn. 2025) (recommending petitioner's release after concluding respondents violated § 241.13(i)(2) because, among other things, a request for travel documents several weeks after petitioner's release was revoked "could not have constituted the supposedly changed circumstances underlying the Notice") (R&R), *adopted*, 803 F. Supp. 3d 775, 784 (D. Minn. 2025).

Respondents also argue the increase in removals to Vietnam is evidence that circumstances have changed such that Petitioner's removal is substantially likely in the

17

reasonably foreseeable future, in part relying on statistics provided in Officer Soto's declaration. *See* Resp. at 23-24. Respondents contend "while removal to Vietnam may not have been likely in 2003, ERO is removing far more individuals to Vietnam now. While in the previous fiscal year ICE had removed only 58 Vietnam citizens, in the 2025 fiscal year alone, ERO has removed 569 Vietnam citizens to Vietnam." *Id*. at 30.

However, Judges in this District and elsewhere have found an increased frequency of removals alone does not demonstrate significant likelihood of removal in the reasonably foreseeable future. *See, e.g., Pham*, 2025 WL 3243870, at *2 (finding nearly identical claims of increased removals to Vietnam made in this case "alone does not demonstrate significant likelihood of removal in the reasonably foreseeable future"); *Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30, 2026) ("Respondents' citation of evidence showing a general upswing in Vietnam's willingness to repatriate its citizens who are in the United States does not suffice to show that Respondents made a specific determination, prior to revoking Petitioner's OOS and detaining Petitioner, that in light of changed circumstances there was a significant likelihood that Petitioner may be removed to Vietnam in the reasonably foreseeable future.").

As in *Pham* and *Tran,* Respondents' reliance on generalized removal statistics is particularly insufficient because it does not meaningfully distinguish between the removals of Vietnamese citizens who entered the United States after 1995 and the removals of individuals, like Petitioner, who entered the United States before July 12, 1995. Historically, Vietnam did not repatriate many pre-1995 entrants, and ICE has at various times acknowledged that removals in that category were generally not significantly likely.

*See Tran v. Scott*, No. 25-cv-01886, 2025 WL 2898638, at *2 (W.D. Wash. Oct. 12, 2025).

Thus, a higher aggregate number of removals to Vietnam does not independently prove

changed circumstances bearing on Petitioner's individualized likelihood of removal.

In addition, Respondents allege circumstances have changed since 2003 making

Petitioner's removal substantially likely.  Resp. at 30.  Officer Soto states:

> In Fiscal Year 2025, as of September 11, 2025, ERO has removed 569
> Vietnam citizens to Vietnam.  In Fiscal Year 2024, ERO removed only 58
> Vietnam citizens to Vietnam.  ICE is currently not recognizing MOUs, and
> the Government of Vietnam has issued travel documents for every travel
> document request ERO has submitted since February 2025.  The majority of
> these cases were citizens of Vietnam who entered the United States prior to
> 1995.

Soto Decl. at 3.  Respondents treat these statements as evidence that circumstances have

changed since 2003 in a manner making Petitioner's removal substantially likely.  The

Court should reject this argument.

First, the assertion that "ICE is currently not recognizing MOUs" is, at best,

unexplained.  It is unclear how ICE's unilateral "non-recognition" of a bilateral repatriation

agreement would alter Vietnam's practices regarding issuance of travel documents,

particularly for pre-1995 entrants who have long been treated differently.  Officer Soto

acknowledges "on December 2, 2016, there was a Memorandum of Agreement between

the United States and Vietnam" that disallowed the return of Vietnamese nationals to

Vietnam "if they arrived in the United States before July 12, 1995."  Soto Decl. at 2

(citation modified).  Officer Soto also identified the applicability of this agreement to

Petitioner, noting "because [Petitioner] entered the United States in 1981, [he] was not

eligible to receive a Travel Document from Vietnam at that time."  *Id.*  However, Officer

Soto concludes the MOU discussion by saying "on June 8, 2017, it was determined by ERO headquarters that the Memorandum of Agreement between the United States and Vietnam does not preclude the removal of subject that entered prior to July 12, 1995." *Id*. at 3 (citation modified).

However, a District Judge in the Western District of Washington recently noted:

In 2017, the United States and Vietnam began to renegotiate the 2008 agreement . . . In accordance with this change, ICE began detaining pre-1995 Vietnamese immigrants for longer than ninety days after their final orders of removal. ICE reasoned that Vietnam might issue the necessary travel documents for repatriation. ICE also began re-detaining some individuals who had been released on orders of supervision.

But this policy did not last long. In 2018, following additional meetings between United States and Vietnamese officials, ICE conceded that, despite Vietnam's verbal commitment to consider travel document requests for pre-1995 immigrants, in general, the removal of these individuals was still not significantly likely. ICE accordingly instructed field offices to release pre-1995 Vietnamese immigrants within ninety days of a final order of removal.

In 2020 the policy changed again when the United States and Vietnam signed a Memorandum of Understanding ("MOU") to create a process for deporting pre-1995 Vietnamese immigrants. Under Section 4 of the MOU, Vietnam affirmed that it "intends to issue travel documents where needed, and otherwise to accept the removal of an individual subject to a final order of removal from the United States" if the individual meets four conditions. First, the individual must have Vietnamese citizenship (and only Vietnamese citizenship). Second, the individual must have violated U.S. law, been ordered removed by a U.S. authority, and completed any sentence of imprisonment. Third, the individual must have resided in Vietnam prior to arriving in the United States and have no right to reside in any other country or territory. . . . Petitioner asserts that from September 2021 to September 2023, the United States deported and repatriated only four pre-1995 immigrants to Vietnam. . . .

20

*Tran*, 2025 WL 2898638, at \*2 (citation modified); *see also Pham*, 2025 WL 3477023, at \*5-6 (R&R) (quoting and relying on *Tran* to recommend granting habeas corpus and immediate release), *adopted,* 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025).

Notably, Officer Soto does not explain why *Petitioner's* removal is likely in the reasonably foreseeable future under this framework.  In short, his statement regarding ICE's "non-recognition" of any MOUs between the United States and Vietnam does not meaningfully address the current framework governing removals to Vietnam and is not evidence that removals of pre-1995 entrants are generally and predictably effectuated.

Second, even if the Court were to accept as true Officer Soto's claim that "the Government of Vietnam has issued travel documents for every travel document request ERO has submitted since February 2025," the declaration is too vague to carry Respondents' burden under § 241.13(i)(2).  Critically, Officer Soto does not state how many travel document requests ERO has submitted since February 2025.  Without that denominator, Respondents' "every request" statistic is not probative: it could reflect a substantial, sustained shift in Vietnam's practices, or it could reflect a small number of requests.  The undersigned is not persuaded by Officer Soto's ambiguous statement that "the majority of these cases were citizens of Vietnam who entered the United States prior to 1995."  Soto Decl. at 3 (citation modified).  It is unclear whether he is referring to the majority of the 569 removals in FY 2025, the subset of removals requiring travel documents, or the subset of travel document requests submitted since February 2025.  This ambiguity matters because not every removal requires a travel document request from Vietnam—for example, when a noncitizen possesses a valid passport or other acceptable

documentation). *See Nguyen*, 788 F. Supp. 3d at 151 (finding the government's assertion that 44 individuals were removed to Vietnam in fiscal year 2024 and 285 were removed in fiscal year 2025 failed to establish a change in circumstances to show a substantial likelihood that removal was reasonably foreseeable where the government did not identify how many of the 328 removed individuals were pre-1995 Vietnamese refugees, like petitioner, and also failed to indicate how many travel document requests had been made).

These deficiencies are compounded by the fact that, under the 2020 MOU described in *Tran*, travel document issuance for pre-1995 entrants is not automatic. It is at most discretionary and conditioned on threshold requirements, including proof of Vietnamese citizenship (and only Vietnamese citizenship) and requirements related to residence in Vietnam and lack of a right to reside in another country or territory. *See Tran*, 2025 WL 2898638, at *2. Here, the record contains no evidence establishing Petitioner's Vietnamese citizenship, and he alleges he resided in a refugee camp in Indonesia immediately before coming to the United States. These facts could bear on whether the MOU's prerequisites are met. Yet Respondents do not identify what evidence of citizenship (if any) was included in the internal travel document request package; nor does Officer Soto address how Petitioner satisfies the MOU's prerequisites such that Vietnam would even reach the discretionary question of issuance.

Therefore, even on Respondents' own framing, the generalized statistics and assertions in the Soto Declaration are insufficient to satisfy Respondents' burden to show the existence of "changed circumstances" at the time of revocation of the OOS as required under § 241.13(i)(2). Respondents have failed to demonstrate how these general

22

conditions, when considering the record as a whole, show a significant likelihood *Petitioner* will be removed in the reasonably foreseeable future. Without individualized evidence, Respondents' reliance on vague, unquantified claims about travel documents issued in other cases does not establish changed circumstances making Petitioner's removal substantially likely in the reasonably foreseeable future. *See Pham*, 2025 WL 3243870, at *2 (finding Respondents did "not adequately address the likelihood of removal of pre-1995 Vietnamese citizens such as Petitioner" where the relied-upon ICE declaration stated "569 Vietnamese citizens were removed from the United States in 2025" and noted this figure "included removals of pre-1995 Vietnamese citizens" but failed to specify the number of pre-1995 removals); *Tran*, 2026 WL 1181700, at *2 (finding "Respondents' citation of evidence showing a general upswing in Vietnam's willingness to repatriate its citizens who are in the United States does not suffice to show that Respondents made a specific determination" about petitioner); *see also Nguyen v. Bondi*, No. EP-25-CV-323, 2025 WL 3120516, at *7 (W.D. Tex. Nov. 7, 2025) (lack of detail in removal data to Vietnam supported finding of no significant likelihood of removal); *Nguyen*, 788 F. Supp. 3d at 151-52  (same); *cf. Tran v. Baker*, No. 25-CV-1598-JRR, 2025 WL 2085020, at *4-5 (D. Md. July 24, 2025) (significant likelihood established where the government provided detailed pre-1995 removal data, had already obtained travel documents before detention, and identified a scheduled consular meeting).

### 2.    Petitioner's claim that Respondents violated § 241.13(i)(3).

Petitioner also alleges his Notice of Revocation of Release, as required by ICE regulations, "offered only insufficient boilerplate language, which falls short of identifying

23

the actual 'reasons' for the revocation, [and] any subsequent 'informal interview' that Respondents claimed to have occurred was insufficient because Petitioner had no meaningful opportunity to respond to the reasons the Notice failed to identify." Doc. 14 at 7. Petitioner further argues his "lack of understanding of the purpose of the interview is made plain by his written statement that has nothing to do with the legal standards at issue under § 241.13(i)." Doc. 14 at 7. The Court need not address this claim in detail if it determines Respondents failed to meet their burden under 8 C.F.R. § 241.13(i)(1)-(2).

### 3.    Habeas relief as an appropriate remedy

Respondents have failed to show ICE abided by its own regulations when revoking Petitioner's OOS, making the revocation unlawful. The undersigned next considers an appropriate remedy for ICE's failure to comply with its own regulations. Judges in this District have found "fail[ure] to comply with § 241.13(i)(2) in establishing a change of circumstances that demonstrated a significant likelihood of removal in the reasonably foreseeable future at the time of Petitioner's re-detention" or "not providing the Petitioner with written notice of the reasons for his revocation" under § 241.13(i)(3) "amounts to a due process violation, entitling the petitioner to habeas relief." *Pham*, 2025 WL 3243870, at *1; *see also Ye*, 2025 WL 3485420, at *3 (finding "ICE's failure to abide by its own regulations in making the decision to revoke Petitioner's OOS renders the revocation unlawful, and that his release is therefore appropriate"); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *4 (W.D. Okla. Dec. 1, 2025) (granting habeas relief where respondents failed to satisfy § 241.13(i)(2)).

24

Respondents rely on two local District Judges' decisions to argue habeas "is not a mechanism for courts to order the fulfillment of administrative requirements or direct release on that basis." Resp. at 30-31; *see Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932, at *3-4 (W.D. Okla. Oct. 31, 2025); *Nguyen v. Bondi*, No. CIV-25-1204-JD, Order, Doc. 20 (W.D. Okla. Dec. 31, 2025). The undersigned finds these cases to be factually distinct from the present matter.[9] The undersigned agrees with the District Judges in this District who have found habeas relief to be appropriate when ICE violates its own regulations in re-detaining a noncitizen like Petitioner's circumstances here.

Therefore, because ICE violated its own regulations, the undersigned concludes Petitioner's detention is unlawful and his release is appropriate under 28 U.S.C. § 2241(c)(3). *See Ye*, 2025 WL 3485420, at *3 (ordering release after finding revocation of petitioner's OOS was unlawful where ICE failed to establish changed circumstances before revocation as required by § 241.13(i)(2)); *Hamidi*, 2025 WL 3452454, at *3 ("ICE's violation of § 241.13(i) denied Petitioner the process to which he was entitled by law and that such a denial entitles Petitioner to habeas relief").[10]

---

[9] "Judge Wyrick in *Bahadorani* acknowledges there are circumstances where a violation of 241.13(i)(2) and (i)(3) can warrant habeas relief where the violation rises to the level of 'a serious substantive defect . . . beyond a mere failure to follow the regulation to a T.'" *Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at *3 n.2 (W.D. Okla. Feb. 19, 2026) (quoting *Bahadorani,* 2025 WL 3048932, at *3). The undersigned concludes that ICE's violation of 241.13(i)(2) is a serious substantive defect.

[10] Other districts courts have similarly found release appropriate in similar circumstances. *See Nguyen v. Warden of the Golden State McFarland Detention Facility*, No. 2:25-CV-03297-SKO (HC), 2026 WL 72110, at *4 (E.D. Cal. Jan. 9, 2026) ("Because the

**C.      The Court should decline to address Petitioner's additional claims for relief.**

Petitioner also alleges his re-detention violated his Fifth Amendment right to due process pursuant to *Zadvydas* and under the APA.  Pet. at 23-24.  Because the undersigned recommends that the Court grant the Petition after finding ICE violated its own regulations by revoking Petitioner's OOS and re-detaining him, the Court should decline to address his remaining claims.  *See Sanchez*, 2025 WL 3484756, at *1 (declining to reach petitioner's *Zadvydas* claim after agreeing with him on his regulatory violation claim); *see also Ye*, 2025 WL 3485420, at *2 n.2 (acknowledging the Magistrate Judge did not consider petitioner's remaining arguments for habeas relief after recommending habeas relief on the regulatory violation); *Hamidi,* 2025 WL 3452454, at *2 n.2 (same).  Further, considering the recommended relief, the Court need not address Petitioner's other requests for injunctive and declaratory relief.  *See* Pet. at 25-27.

---

Government was required to, but failed to comply with, section 241.13(i) when it revoked Petitioner's supervised release on October 16, 2025, issuing a writ to reinstate that release is warranted to preserve the status quo before the Government's unlawful actions."); *Sanchez v. Bondi*, No. 25-CV-02287-CNS, 2025 WL 3484756, at *1 (D. Colo. Dec. 4, 2025) (granting petitioner's release because revocation of his OOS was effected without compliance with applicable regulations); *Tran v. Bondi*, No. C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025) (finding petitioner's re-detention did not comply with the requirements of 8 C.F.R. § 241.13, and granting habeas relief); *E.M.M. v. Almodovar,* No. 25-CV-08212 (MMG), 2025 WL 3077995, at *4 (S.D.N.Y. Nov. 4, 2025) (holding "[i]f the Government's violation of its own regulations culminates in an alien's detention, due process may require that alien's release" and granting habeas relief); *Yee S. v. Bondi*, 2025 WL 2879479, at *6 (D. Minn. Oct. 9, 2025) (ordering release because petitioner showed ICE's re-detention of him "violated the law because ICE did not comply with its own regulations under section 241.13(i)(2)"); *Roble*, 803 F. Supp. 3d at 774 (holding "ICE, like all government agencies, must follow its own regulations," and ordering release based on violation of 8 C.F.R. § 241.13(i) (citation modified)); *Sarail A.*, 803 F. Supp. 3d at 784 (ordering release based on violation of 8 C.F.R. § 241.13(i)).

## V.     Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the Petition to the extent Petitioner requests habeas relief under 28 U.S.C. § 2241 for release from ICE custody.  The undersigned recommends that the Court order Respondents to release Petitioner from custody immediately, subject to an appropriate Order of Supervision.  *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." (citation modified)).  The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within five business days of the Court's order.

Parties are advised of their right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objection must be filed not later than **June 1, 2026**.  *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party wishes to respond to the other party's objections, such response must be filed not later than **June 4, 2026**.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

27

**ENTERED** this 22nd day of May, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE